UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO GONZALES,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF BAKERSFIELD, et al.,<br><br>　　　　　Defendants. | Case No.: 1:16-cv-00107 JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOERY<br>(Doc. 24)<br><br>ORDER VACATING HEARING DATE |

　　　　In this action, the plaintiff asserts that officers of the Bakersfield Police Department used excessive force during the course of his arrest in violation of the Fourteenth Amendment. (*See* Doc. 1) He claims that on January 19, 2015, officers "beat him, retrain[ed] him, and pile[d] onto his back." Id. at 2. As a result, he claims he suffered injuries to his back, neck and shoulders. Id. The plaintiff does not claim that during the incident that any officer used any weapon or that any officer used deadly force. Despite this, in discovery requests, he seeks to require the defendants to produce information related to incidents in which officers used deadly force for a period of 10 years preceding the January 2015 incident. In addition, he seeks information related to incidents in which people suffered "injuries" as a result of the "use of force" over this same 10-year period.

　　　　The Court has reviewed the motion and supporting documents, and found the matter suitable for decision without oral arguments according to Local Rule 230(g). The Court concludes that most of discovery requests are overbroad and are not proportional to the needs of the case. For the reasons set

forth below, the hearing on August 30, 2016 is **VACATED** and the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel discovery.

## I.     Relevant Background

In the late evening of January 19, 2016, officers from the Bakersfield Police Department travelled to the plaintiff's home after they claim the department received phone calls from the plaintiff during which he made threats to kills police officers. (Doc. 24-1 at 6-7) The defendants claim that the plaintiff reported that he was going to ambush officers and possessed various dangerous weapons. Id. The defendants claim that when he reached toward his waistband, officers pushed him onto his stomach and, eventually, after securing his hands, they placed him in handcuffs. Id. at 8-9.

The plaintiff claims that the incident involved a case of mistaken identity and that officers ordered him from his house, made him get down on his knees and despite his full compliance with all orders given by the police officers, they tackled him and knocked him into a prone position, struck him, kneed him in the back and then used "restraint techniques." (Doc. 24-1 at 3)

Despite the undisputed fact that no officers used a weapon during the incident, plaintiff alleged in his complaint various incidents of the use of deadly force by Bakersfield police officers and that the City of Bakersfield "has the highest per capita death rate from police encounters in the country." (Doc. 1 at 6.) He alleges that "this culture contributed to creating the conditions for his serious and lasting injuries." Id. In particular, the plaintiff claims that the City of Bakersfield ratified the officer's unlawful conduct, maintained a policy of inadequate training, investigation and discipline and maintained practices of using excessive force and failing to intervene in the use of excessive force. Id. at 10-13.

In this motion, the plaintiff seeks to compel the defendants to provide information on various topics including incidents of the use of all types of force over the ten years before the incident by any officer.

## II.    Scope of Discovery and Requests

The Federal Rules of Civil Procedure and the Federal Rules of Evidence set forth the scope and limitations of discovery. Rule 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

> claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

    A.    <u>Interrogatories</u>

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)). Further, the responding party must supplement a response he later obtains the information sought or discovers the previous response requires correction. Fed. R. Civ. P. 26(e)(1)(A).

The following interrogatories are at issue:

1.    How many times has an OFFICER used deadly force during the ten year period ending on January 20, 2015?

2.    How many times have YOU disciplined an OFFICER for the use of deadly force during the ten year period ending on January 20, 2015?

3.    How many times have YOU found the use of deadly force by an OFFICER during the ten year period ending on January 20, 2015 to be not within policy?

As to the first three interrogatories, the Defendants responded as follows:

> Objection. This request is vague, ambiguous, overbroad, and burdensome. Further, this request seeks information protected from disclosure pursuant to the law

enforcement privilege, official information privilege, and executive privilege. In addition, this request further seeks to invade privacy rights of responding party and third parties. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. This is not a deadly force case and this information sought is not narrowly tailored and has no relevance in this case.

In light of the foregoing objections, no response is provided.

4. How many times has an OFFICER used force resulting in injury during the ten year period ending on January 20, 2015?

5. How many times have YOU disciplined an OFFICER for the use of force resulting in injury during the ten year period ending on January 20, 2015?

6. How many times have YOU found that the use of force resulting in injury by an OFFICER was not within policy during the ten year period ending on January 20, 2015?

7. How many times has an OFFICER used force during an arrest during the ten year period ending on January 20, 2015?

8. How many times have YOU disciplined an OFFICER for the use of force during an arrest during the ten year period ending on January 20, 2015?

9. How many times have YOU found that the use of force by an OFFICER during an arrest during the ten year period ending on January 20, 2015 was not within policy?

10. How many times has an OFFICER used force again [sic] an individual in custody during the ten year period ending on January 20, 2015?

11. How many times have YOU disciplined an OFFICER for the use of force again [sic] an individual in custody during the ten year period ending on January 20, 2015?

12. How many times have YOU found that the use of force by an OFFICER against an individual in custody during the ten year period ending on January 20, 2015 was not within policy?

The defendants responded in largely the same manner in response to interrogatories 4 through 12:

Objection. This request is vague, ambiguous, overbroad, and burdensome. Further, this request seeks information protected from disclosure pursuant to the law enforcement privilege, official information privilege, and executive privilege. In addition, this request further seeks to invade privacy rights of responding party and third parties. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. It is grossly overbroad and burdensome.
In light of the foregoing objections, no response is provided.

16. For each civil verdict against an OFFICER during the ten year period ending on January 20, 2015 in lawsuits in which excessive force was alleged, state whether YOU disciplined the officer.

As to interrogatories 16 and 18, the defendants responded:

> Objection. This request is vague, ambiguous, overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information protected from disclosure pursuant to the law enforcement privilege, official information privilege, and executive privilege. In addition, this request further seeks to invade privacy rights of responding party and third parties.
> In light of the foregoing objections, no response is provided.

17. For each settlement of a lawsuit against an OFFICER during the ten year period ending on January 20, 2015 in which excessive force was alleged, identify (a) the plaintiff, (b) the involved officer(s), (c) the case number, (d) the date of the incident, and (e) the amount of the settlement.

The defendants responded similarly:

> Objection. This request is vague, ambiguous, grossly overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this request further seeks to invade privacy rights of responding party and third parties.
> In light of the foregoing objections, no response is provided.

18. For each settlement of a lawsuit against an OFFICER during the ten year period ending on January 20, 2015 in which excessive force was alleged, state whether YOU disciplined the officer.

B.  Requests for Production of Documents

A party may request documents within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192. F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima &

5

Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and must produce all responsive, relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). The party need not have actual possession, custody or control of the documents or items. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995).

The following document requests are at issue:

41. All DOCUMENTS that constitute the complete file of any investigation of the shooting of Ramiro James Villegas, who went by the name James De La Rosa, in November 14, 2014. This request includes DOCUMENTS that REFER OR RELATE to any discipline imposed against any involved OFFICER.

43. All DOCUMENTS that constitute the complete file of any investigation of the detention or arrest of Monte Wilson in October 2015. This request includes DOCUMENTS that REFER OR RELATE to any discipline imposed against any involved OFFICER.

44. All DOCUMENTS that constitute the complete file of any investigation of the arrest or detention of Jesus A. Trevino in 2014. This request includes DOCUMENTS that REFER OR RELATE to any discipline imposed against any involved OFFICER.

45. All DOCUMENTS that constitute the complete file of any investigation of the shooting of Jason Alderman in August 2015. This request includes DOCUMENTS that REFER OR RELATE to any discipline imposed against any involved OFFICER.

46. All DOCUMENTS that constitute the complete file of any investigation of the shooting of Jorge Ramirez on or about September 16, 2013. This request includes DOCUMENTS that REFER OR RELATE to any discipline imposed against any involved OFFICER.

As to each of these documents requests, the defendants responded:

>Objection. This request is vague, ambiguous, overbroad, compound and not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks documents protected from disclosure pursuant to the attorney-client privilege, the attorney work product doctrine, the law enforcement privilege, official information privilege, and executive privilege. In addition, this request further seeks to invade privacy rights of responding party and third parties. The above referenced case has absolutely no relevance to this case and this request is unduly burdensome.
>In light of the foregoing objections, no documents will be produced.

### III.  Discussion and Analysis

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" when "a party fails to answer an interrogatory submitted under Rule 33; or . . . a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

### A.  Deadly Force

Plaintiff offers no argument as to the individual interrogatories but offers a blanket statement as to the validity of all of the discovery he propounded.[1] Thus, he offers no legal authorities that in this case, in which deadly force was not used, that he may use the discovery process to delve into situations in which officers did use deadly force. Preferring to stand on his minimal broad arguments, he does not address the authorities cited by the defendants.

In any event, as noted above, despite the language of his complaint, he is entitled to conduct discovery only as to *relevant* evidence. According to Fed. R. Evid. 401, relevant evidence is that which has a tendency to prove a fact that is of consequence to the action. Therefore, discovery as to the use of deadly force is relevant only if it will tend to prove a fact that bears on the question of liability. However, the plaintiff offers no cognizable argument that the discovery into the uses of

---

[1] The plaintiff offers no explanation for failing to comply with Local Rule 251(c)(3) which reads, "The respective arguments and supporting authorities of the parties shall be set forth immediately following each such objection." The Rule provides further, "All arguments and briefing that would otherwise be included in a memorandum of points and authorities supporting or opposing the motion shall be included in this joint statement, and no separate briefing shall be filed." Despite this, the plaintiff fails to provide specific legal authorities that address the actual disputes at issue.
  Moreover, the Court's express and explicit order that the plaintiff was authorized to file a motion to compel **only** as to the issues discussed at the informal telephonic conference re: discovery dispute (Doc. 23). This was due to the Court repeatedly asking whether there were any other issues to discuss and receiving negative responses. Despite this, the plaintiff raised issues in his motion that were **not** discussed at the informal conference.
  Plaintiff's counsel are advised that future failures to comply with the Court's orders or Local Rules will result in the Court striking the pleading or the offending portion thereof and imposing sanctions.

deadly force would do so.[2]

Notably, under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978), municipal liability may be imposed only when the unlawful official custom or policy inflicts the injury of which the plaintiff complains.  A "rule or regulation promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies Monell's policy requirements." Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir.1989). Official policy may derive from "a decision properly made by a local governmental entity's authorized decisionmaker-i.e., an official who 'possesses final authority to establish [local government] policy with respect to the [challenged] action.'" Id. 1443 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion). "The existence of a policy, without more, is insufficient to trigger local government liability under section 1983." Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir.1992). "Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." Thompson, 885 F.2d at 1444. "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694).

Despite these standards, Plaintiff argues, without citation to authority, that, "It stands to reason that if police officers can (literally) get away with murder, without accountability or consequences, then this invites and encourages lesser uses of excessive force, as well as contributing to a culture of impunity regarding the use of excessive force." (Doc. 24-1 at 5)  However, the fallacy of this assertion is underscored by the exacting legal standards that set forth when an officer may lawfully use deadly force.  These circumstances are limited to those in which the suspect poses an immediate threat of death or serious bodily injury. Tennessee v. Garner, 471 U.S. 1, 11 (1985).  Given this significant limitation, the Court rejects the plaintiff's rumination that an unlawful practice related to the use of deadly force informs the City's practices related to the use of non-deadly force.  As pointed out by the defendants, this Court has held previously that discovery related to incidents of the use of deadly force

---

[2] For example, the plaintiff offers no argument why he believes this evidence would survive a 403 analysis at trial to allow the Court to admit it.  Likewise, he does not even imply that this evidence would lead to admissible evidence.

are not justified in cases in which the force used was less than lethal. (Doc. 24-1 at 13)

In short, the Court rejects that merely because a plaintiff alleges that he suffered excessive, non-deadly force that this opens up the entity to discovery related to all types of force in all types of situations. This is especially true where, as here, the needs of the case do not warrant this type of expansive discovery. The issues involved in this case are not complex and though the case is important to the parties, its resolution will have no great significance outside of them. Finally, the amount in controversy is, relatively speaking, not significant. Thus, the motion as to Interrogatories 1-3, 6, 9 and 12 is **DENIED**.

### B. The interrogatories are vague, ambiguous and overbroad

At the informal conference, the Court discussed with counsel for the plaintiff that various of the phrases used in the discovery requests were vague and overbroad. The Court pointed out that uses of force include a spectrum of force options from command authority and verbal orders to deadly force and "use of force" would include incidental force, such as that lawfully exerted by an officer to place a person in handcuffs. Despite this, the plaintiff refuses to define his meaning of the troubling phrases requests or to clarify exactly what it that the plaintiff seeks. Instead, he notes, "Plaintiff is not persuaded that his requests are not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 24-1 at 22) However, of course, as to this motion, it is the Court rather than the plaintiff who must be persuaded that the discovery is proper and the objections are improper.

Despite the plaintiff's flip comparison between the "use of force" and an "oil change" (Doc. 24-1 at 23-24), the Court rejects his conclusion—which is unsupported by any analysis or legal authorities—that the phrase "use of force" is so widely understood by those in law enforcement as to need no definition. The Court disagrees and finds the plaintiff's reference to POST standards (Doc. 24-1 at 23) fails to alleviate the ambiguity. POST's Learning Domain 20, uses the phrase "use of force," as a hugely broad category of actions that law enforcement officers may take in response to resistant and non-compliant suspects and outlines the force options available. For example, POST trains officers that an officer may use force on a passive but non-compliant person by lifting and/or carrying him. Officers are taught by Learning Domain 20 that as the degree of resistance increases, they may use a greater quantum of force to overcome the resistance. Ultimately, Learning Domain 20

instructs that officers may use deadly force if the suspect acts in a manner that is likely to cause death or serious bodily injury. Thus, the Court concludes that the phrase "use of force" is vague and, due to the lack of a limiting definition, is overbroad.

In addition, at the informal conference, the Court noted that the phrase, "resulting in injury," was vague. "Injury" includes minor impacts such as bruises and scratches that may result from even incidental, lawful uses of force. Nevertheless, the plaintiff argues, "These requests seek to discover whether there were repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." (Doc. 24-1 at 21) However, he offers no showing that these types of minimal "injuries" suffered through the use of lawful force, would bear on any relevant issue in this case.

The plaintiff argues that officers are trained by POST to document uses of force. (Doc. 24-1 at 23) Common sense dictates, however, that when an officer uses voice commands or mere command authority, the records would have no bearing on the issues in this case. Moreover, the Court surmises that nearly every police report will indicate some measure of force applied to the arrestee because nearly every suspect is required to submit to handcuffing. On the other hand, where there is no citizen complaint or adverse comment made about the officer's conduct, it would be less likely to be the type of report that would indicate an unlawful use of force.

The defendants argue that due to the overbreadth of the requests, responding to the requests would require someone to review every police report and every use of force report because their system does not track this type of information. (Doc. 24-1 at 18) Brent Stratton of the Bakersfield Police Department attests that to determine whether a person suffered an injury due to an officer using force would be unwieldy and would take "thousands of man hours." (Doc. 26 at 2) He reports that before 2014, the City did not keep record of injuries suffered by arrestees and these incidents could be discovered only by combing through each incident report. Id. Also, Stratton notes that certain uses of force require the officer to transport the person to a hospital regardless of whether there is an apparent injury. Id. As to these, the City would need to contact the hospital to determine whether there was an actual injury. Id. As to other force methods, Mr. Stratton reports that unless the person reports an injury, there is no way for the City to know whether the person suffered an injury. Id. at 2-3. Mr.

Stratton reports that since 2014, the City has a computer system that tracks uses of force and the significance of injuries suffered "but it does not characterize what the injury is." Id.

Mr. Stratton asserts also that the City disciplines officers for the use of unlawful force regardless of whether the person suffered an injury. (Doc. 26 at 3) Consequently, the City does not track whether the suspect suffered an injury. Id. In addition, Stratton reports that, according to California Penal Code § 832.5[3], the City maintains records related to discipline imposed due to the use of unlawful force, only for five years rather than the 10 years requested. (Doc. 26 at 3) Also, the City compares the officer's use of deadly force to the City's policy to determine whether the use of force complies but it does not do so as to other uses of force. Id. Finally, Mr. Stratton reports that "in custody" injuries would be difficult to identify because it would require a report-by-report analysis to determine whether the person was "in custody," and this determination is further complicated by the fact that the plaintiff does not define this phrase.

The Court agrees that the phrase "in custody" is also vague and ambiguous. The plaintiff may intend to seek information only as to those who were under arrest at the time of the use of force. However, if this is the case, then the interrogatories that use this language would duplicate those which seek information about uses of force during an arrest.[4]

In addition to the ambiguity of the interrogatories, the Court rejects that the breadth of discovery sought, related to all types of force in all types of circumstances is not proportional to the needs of the case. As noted above, the issues involved in this case are not complex, resolution of the matter will have no great significance outside of the parties and the amount in controversy is, relatively speaking, not significant. For all of these reasons, the motion as to Interrogatories 4 through 12 is **DENIED**.

**C.     Privacy**

Though federal courts recognize a general right to privacy, the resolution of a privacy

---

[3] California Penal Code § 832.5(b) reads, "Complaints and any reports or findings relating to these complaints shall be retained for a period of at least five years."

[4] It may be that the plaintiff is under the impression that the City maintains a jail. The Court takes judicial notice that the City does not maintain a jail as this is a fact of ready determination and is within the general knowledge of those located in this area. Fed. R. Evid. 201(b).

objection requires a balancing of the need for the particular information against the privacy right asserted. Soto v. City of Concord, 162 F.R.D. 603, 621 (N.D. Cal 1995). As to police officer personnel files, courts have recognized privacy rights (Kelly v. City of San Jose, 114 F.R.D. 653, 660 (C.D. Cal. 1987); Denver Policemen's Protective Ass'n. v. Lichtenstein, 660 F.2d 432, 435 (10th Cir.1981) and have determined the Court should give them some weight if they are protected by state constitutions or statutes. Kelly, 114 F.R.D. at 656. However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments. Kelly, 114 F.R.D. at 660.

The Court recognizes that the information contained in police personnel files is unlikely to be available from any other source than the defendants' files. Kelly, 114 F.R.D. at 667. Also, there is a strong public interest in uncovering civil rights violations by police officers. Id. at 660. Those interests would be substantially diminished if access to relevant portions of the requested personnel files is denied. Repeatedly, courts have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights plaintiff's need for the documents. Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D.Cal.1993); Miller v. Panucci, 141 F.R.D. 292, 301 (C.D.Cal.1992).

For these reasons, the Court finds that the privacy interests are outweighed by the need for disclosure. Ramirez v. City of Los Angeles, 231 F.R.D. 407 (C.D.Cal.2005); Taylor v. Los Angeles Police Dept., 1999 WL 33101661 (C.D.Cal.1999); Soto, 162 F.R.D. at 621. However, this does not mean that Plaintiff is entitled to unfettered access to information contained in personnel records. For example, there is no showing that there is any need to know the identity of the person making claim of excessive force, the names of the officers involved or the amount of the settlement. The plaintiff has offered no explanation that any of this information would bear on Monell liability. Thus, the motion is **GRANTED** as to Interrogatory 16, 17(c) and 18 and **DENIED** as to Interrogatory 17(a), (b), (d) and (e)

### E.    Other specific claims of bad acts

The plaintiff seeks the entire investigative file related to incidents involving plaintiffs Monte Wilson and Jesus Trevino. The Court is well-aware of these parties given their lawsuits were filed in

this Court.[5]  Given what has been alleged in these two actions, the Court is at a loss to understand how these other events would bear on <u>Monell</u> liability in this case.  Once again, the plaintiff has failed to explain and the Court will not manufacture the plaintiff's arguments.  Thus, the objection based upon relevance is **SUSTAINED** and as to Requests for Production numbers 43 and 44, the motion is **DENIED.**

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Defendants' motion to compel discovery (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. As to Interrogatories 1 through 3, 4, 5, 6, 7, 9, 10, 11, 12 and 17(a)(b)(d) and (e) and Requests for Production of Documents number 41, 45 and 46, the motion is **DENIED**;

    b. As to Interrogatories 16, 17(c) and 18, the motion is **GRANTED**;

    c. As to Requests for Production numbers 43 and 44, the motion is **DENIED**.

IT IS SO ORDERED.

Dated:   **August 25, 2016**                    /s/ Jennifer L. Thurston
                                                UNITED STATES MAGISTRATE JUDGE

---

[5] For example, in the Monte Wilson case (Case number 1:16-cv-00387 JLT), the plaintiff has pleaded only that degree of force needed to lock the handcuffs on his wrists. In the Trevino action (Case number 1:14-cv-01873 JLT), the plaintiff alleged an excessive use of force due to the officer's failure to appreciate that he was not refusing to comply with officer orders but was unaware of the orders due to the fact that he was deaf. This is a significantly different factual circumstance from that alleged here.